**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LAVONNE E. FRENCHER; JOHN FRENCHER | ) |
| | ) CIVIL ACTION |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| VOLT ASSET HOLDINGS NPL 3; CALIBER | ) |
| HOME LOANS | ) |
| | ) JURY TRIAL DEMANDED |
| Defendants, | ) |

**COMPLAINT**

NOW COME LAVONNE E. FRENCHER and JOHN FRENCHER ("the Frenchers'"), by and through their attorneys of the LAW OFFICE OF HERBERT HILL, and complaining against the Defendants and states as follows:

**NATURE OF THE ACTION**

1.      The Frenchers' brings this action against VOLT ASSET HOLDINGS NPL 3, ("VOLT") and CALIBER HOME LOANS ("Caliber") for violations of the Truth in Lending Act ("TILA") 15 U.S.C § 1601 *et seq* (Count I), Racketeer Influenced Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c) (Count II); RICO Act, 18 U.S.C. § 1962(d) (Count III) the Fair Debt Collections Practices Act, ("FDCPA") 15 U.S.C. §1692 et seq (Count IV), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA", 815 ILCS 505/2 et. seq. (Count V), and Intentional Infliction of Emotional Distress ("COUNT VI").

2.      Defendant Caliber charged the Frenchers' multiple property inspections by utilizing a computer system to automatically assess fees for property inspections without regard to the terms of the Frenchers' mortgage loan. Instead of being based upon reasonable parameters, a computer system was programmed to assess multiple charges. Consistent with these practices, Caliber uses automated mortgage loan management systems, made up subsidiaries, inter-

1

company departments, divisions, and third-party "property preservation" vendors, to engage in a scheme to conceal the unlawful assessment of improperly marked-up third party fees for default related services.

## JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction over the Frenchers' RICO claims pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964.  Supplemental jurisdiction over the state law claims exists under 28 U.S.C. § 1367(a).

4.      Further, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) and/or (d) because: (a) the Frenchers' and Defendants are citizens of different states and the individual matter in controversy between them exceeds $75,000, exclusive of interests and costs.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the Frenchers' resides in this District, the property that is the subject of this action is situated in this District, and a substantial part of the events or omissions occurred in this District.

## PARTIES

6.      Plaintiffs LAVONNE E. FRENCHER and JOHN FRENCHER ("the Frenchers'"), are natural persons residing within this Court's jurisdiction at 18303Carrington Drive, Hazel Crest, IL 60429.

7.      Defendant VOLT ASSET HOLDINGS NPL 3 ("VOLT") is a mortgage loan trust with an address of 13801 Wireless Way, Oklahoma, OK 73134.

8.      Defendant, CALIBER HOME LOANS ("Caliber") is a full-service national mortgage lender and agency direct seller/servicer with its principal place of business located at 13801 Wireless Way, Oklahoma City, OK 73134. Defendant transacts business in Illinois.

Defendant's Illinois registered agent is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, Illinois 60604.

### Defendant Caliber's Automated Loan Servicing Practices

9.      Caliber assigns the complex task of administering the millions of loans it services to computer software programs. The software programs are designed to manage the Frenchers' accounts and assess fees, according to the protocols designed by the Executives at Caliber, as was the case in the Frenchers account.

### Automated Loan Management Practices

10.     Protocols and policies established by Caliber's loan servicing business Executives are automated through a computer software program.

11.     When a loan is originated, guidelines for managing the loan are imported in the computer software program. Loans. are then automatically managed by the software according to those guidelines. When the Frenchers' loan became past due, Caliber's system according to its guidelines, automatically instructed the computer to impose default related fees.

### Excessive Fees for Default Related Services

12.     In their loan servicing operations, Caliber follows a strategy to generate fraudulently concealed default-related income.

13.     Calibers scheme works as follows: Caliber orders default-related services from their subsidiaries and affiliated companies, who, in turn, obtain the services from third-party vendors. The third-party vendors charge Caliber for their services. However, Caliber computer systems orders property inspection fees that at times are not even done. As a result, Caliber earns profits by assessing these fess to the Frenchers' account.

14.     The mortgage contract consists of the mortgage and promissory note. Paragraph 7

of the mortgage states: LENDERS RIGHT TO PROTECT ITS RIGHT IN THE PROPERTY:

> "If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect the Lender's rights in the Property…the Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lenders actions may, without limitation, include…entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions." <u>Exhibit 1</u>

15.     Paragraph 8 of the mortgage, LENDERS RIGHT TO INSPECT THE

PROPERTY states:

> "Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection."

16.     The mortgage discloses that the Lender may do and pay for whatever it deems

reasonable, but nowhere does it disclose that the Lender may charge borrowers for charges that

were not performed or unreasonable. Furthermore, the Lender must give notice and have a

reasonable purpose.

17.     By charging the unreasonable marked up property inspection fees that violates the

disclosures that were made to the Frenchers'.

18.     Caliber and their third-party "property-preservation" and "BPO" vendors, formed

an enterprise and devised a scheme to defraud the Frenchers' and assess these fees by false

pretenses.

19.     On information and belief Caliber has assesses the Frencher's account for

unlawful and marked up.

20.    As a result of Caliber's unlawful enterprise of the Frencher's property was assessed inspection fees.

**The Frenchers' Suffered Harm as a Result of Calibers Practices**

21.    In addition to the direct monetary damages caused to the Frenchers, in the form of the difference between the actual cost of the services provided and the marked-up fees assessed on the Frenchers' account and their balance increased.

22.    The assessment of these marked-up fees have been assessed to the Frenchers' loan making it unreasonable, unfair and deceptive to try and do any work out options.

**Statute of Limitations**

23.    Any applicable statues of limitations have been tolled by Caliber's knowing and active concealment, denial, and misleading actions, as alleged herein. The Frenchers' could not reasonably have discovered the true nature of Caliber's scheme to defraud them by charging unlawful fees to their account.

24.    Caliber knowingly, affirmatively, and actively concealed the true character, quality, and nature of their assessment of marked-up fees against the Frenchers' account. The Frenchers' reasonably relied upon Caliber's knowing affirmative, and active concealment. Based on the foregoing, Caliber is estopped from relying on any statutes of limitation as a defense in this action.

25.    These fees were discovered only after Caliber responded to the Frenchers' request for information dated September 23, 2015. Exhibit 1

**Factual Allegations**

26.    The Frenchers' are the sole owner of the single family residence commonly known as 18303 Carrington Drive, Hazel Crest, IL 60429. ("the Property")

27.     On April 24, 2006 the Frenchers' obtained a first mortgage from Wilmington Finance, Inc. in the amount of $420,000.00. Exhibit 2

28.     The first mortgage was a fixed rate note in the amount of $420,000.00, listing the interest at 7.99% with the first payment beginning on June 1, 2006, a maturity date of May 1, 2036, with a monthly payment of $3,078.88.

29.     Upon information and belief, on April 24, 2006 when the Frenchers closed their loan, CitiMortgage, Inc. was the actual lender.

30.     On December 7, 2010 the Frencher's loans were purportedly transferred from Wilmington Finance, Inc. to CitiMortgage, Inc. Exhibit 3

31.     On December 15, 2010, a foreclosure lawsuit filed in the Circuit Court of Cook County, Illinois: *U.S. Bank, N.A. v. Lavonne E. and John Frencher Jr.; Unknown Owners and Non-record Claimants,* case number 10 CH 52981.

32.     On December 4, 2011, CitiMortgage, Inc., by Vericrest Financial, Inc., attorney-in-fact, purportedly granted, sold, assigned, transferred and conveyed the Frencher's loan to LSF7 Bermuda NPL VII Trust.  Exhibit 4

33.     On December 5, 2011, Vericrest Financial, Inc., sent the Frenchers correspondence alleging that Volt Asset Holdings NPL3 was the new owner of the Frenchers loan.  Exhibit 5

34.     On April 23, 2012, David Kadzai filed an appearance on behalf of the Frenchers and on May 10, 2012 filed an answer and counterclaim.

35.     On October 15, 2012, LSF7 Bermuda NPL VII Trust purportedly granted, assigned, transferred the Frencher's loan to VOLT Asset Holdings NPL 3.  Exhibit 6

36.     On April 30, 2013, the foreclosure complaint was dismissed.

37.     On March 28, 2014, Caliber sent the Frenchers correspondence alleging that Vericrest Opportunity Loan Trust RLP XII Trust was the investor/owner of the Frenchers loan. Exhibit 7

38.     On December 7, 2010 the Frencher's loans were purportedly transferred from Wilmington Finance, Inc. to U.S. Bank Trust N.A. as Trustee for VOLT Asset Holdings NPL 3. Exhibit 8

39.     On August 27, 2015 Caliber sent the Frenchers a payoff quote as follows:

|  |  |  |
|---|---|---|
| | $420,385.82 | (Current Unpaid Principal) |
| | $113,340.79 | (Interest) |
| | $50.25 | (Reconveyance Fee) |
| | $13,285.34 | (Unpaid Other Charges) |
| + | $47,393.60 | (Escrow Balance) |
| | **$594,455.80** | **Total Amount Due**     Exhibit 9 |

40.     On September 23, 2015, The Frenchers' sent by registered mail a Request for Information ("RFI"), as further defined by Reg. X, 12 C.F.R. § 1024.36(a) in regards to their first and second mortgage. Exhibit 10

41.     On September 30, 2015, Caliber responded to her request and informed The Frenchers' that VOLT Asset Holdings NPL 3 ("VOLT") is the owner of their loan. Exhibit11

42.     On October 20, 2015, Caliber sent the Frenchers' a loan summary which disclosed certain property inspection fees, foreclosure title fees, broker price opinions, misc. expenses, interior inspections, door knocks, and foreclosure attorney fees and costs. Exhibit 12.

43.     On November 6, 2015, the Frenchers rescinded the transaction by sending notice of rescission to Caliber Home Loans and VOLT. Exhibit 13 and Exhibit 14

*Discovery Rule*

44.     The cause of actions here was not discovered until the Frenchers' asked for the identity of the owner of her loan on September 23, 2015 and was informed their loan was owned

by VOLT and sent them copy of their assignments. This information was not available to them at the time they closed their loan, nor are they aware of the current owner of their loan.

## RICO ALLEGATION
### The Enterprise

45. Defendants are all "persons" within the meaning of 18 U.S.C. § 1961(3).

46. Based upon the Frenchers'' current knowledge, the following persons constitute a group of individuals associated in fact that will be referred to herein as the "Caliber Enterprise": (1) Caliber Home Loans (2) along with their property inspection vendors which conducted the property inspections billed to the Frenchers' account and the (3) VOLT Trust complained of herein.

47. Caliber and the property inspection vendors acted with other entities with respect to the Frenchers' loan who are and were each a **person** as defined in 18 U.S.C. § 1961(3) at all times relevant to this transaction

48. The Caliber Enterprise is an ongoing organization that engages in, and whose activities affect, interstate commerce through a pattern of racketeering activity.

49. The members of the Caliber Enterprise function as a continuing unit and share the common purpose of maximizing their profits by charging the Frenchers' improper property inspection fees and other charges.

50. Caliber Enterprise has a systematic linkage because there are contractual relationships, agreements, financial ties, and coordination of activities between Caliber, Volt and the vendors that perform property inspections. Caliber's computer system is a common communication network by which Caliber and these vendors share information. This common communication network allowed Caliber to charge the Frenchers' improper property inspection fees and to exchange the resulting profits.

8

51.     While all entities participate in and are members and part of the Caliber Enterprise, they also have an existence separate and distinct from the enterprise.

52.     The Caliber Enterprise have computer system to automatically generate work orders for improper property inspections that purportedly instruct vendors to conduct inspections; sending out vendors to inspect the property; arranging for vendors to upload completed electronic reports of the property inspections directly into the automated system; assessing fees to the Frenchers' for property inspections on monthly mortgage statements; concealing the nature of the property inspection fees on monthly mortgage statements; and paying vendors for each property inspection completed using funds received from the Frenchers'.

53.     The Caliber Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engage.

**Predicate Acts**

54.     Second, § 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud). As set forth below, Caliber and Volt have engaged, and continue to engage, in conduct violating each of these laws to effectuate their scheme.

**Violations OF 18 U.S.C. § 1341 and 18 U.S.C. § 1343**

55.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, Caliber and Volt, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carriers, filings through the Cook

County Clerk's office, and receiving matter and things from the Postal Service or commercial interstate carriers, including but not limited to agreements, monthly mortgage statements, legal correspondence, checks, and inspection reports.

56.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, Caliber and Volt, in violation of 18 U.S.C. § 1343, transmitted and received by wire, matter and things, including but not limited to agreements, monthly mortgage statements, correspondence, wire transfers, and inspection reports, and made or caused to be made false statements over the telephone, facsimile, electronic mail, and internet.

57.     The matter and things sent by Caliber and Volt via the Postal Service, commercial carrier, Cook County Clerk filing system, Cook County Recorder, wire, or other interstate electronic media included, inter alia: agreements, monthly mortgage statements, legal correspondence, mortgage assignments, payments and inspection reports.

58.     Other matter and things sent through or received via the Postal Service, Cook County Clerk's office, commercial carrier, wire, or other interstate electronic media by Caliber and Volt included information or communications in furtherance of or necessary to effectuate the scheme.

59.     By issuing mortgage statements to the Frenchers' Caliber represented to the Frenchers' that all amounts due on these statements were lawful and appropriate charges.

60.     Therefore, Caliber misrepresented to Frenchers' that all fees, charges and amounts due were lawful and proper.

61.     Calibers misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving the Frenchers' and obtaining

their property for Caliber and VOLT's gain.

62.     Caliber and Volt either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and the Frenchers' relied upon the misrepresentations and omissions.

63.     As a result, Caliber has and is attempting to obtain money and property belonging to the Frenchers' and they have been injured in their business or property by the Defendants' overt acts of mail and wire fraud.

**Pattern of Racketeering Activity**

64.     Caliber and Volt have engaged in a "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5)(6), by attempting to collect an unlawful debt and by committing at least two acts of racketeering activity, i.e., indictable violations of 18 U.S.C. §§ 1341 and 1343 as described above, within the past four years. In fact, Caliber has committed thousands of acts of racketeering activity. Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including the Frenchers'.

65.     The multiple acts of racketeering activity that Caliber committed were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

**Rico Violations**

66.     Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity …"

67.     Through the patterns of racketeering activities outlined above, the Defendants have also conducted and participated in the affairs of the Caliber Enterprise.

68.     Each of the Defendants agreed to participate, directly or indirectly, in the conduct of the affairs of the Caliber Enterprise through a pattern of racketeering activity comprised of numerous acts of mail fraud and wire fraud, and each Defendant so participated in violation of 18 U.S.C. § 1962(c).

### Cause of Actions

### COUNT I
### *Truth in Lending Act (Rescission)*
### *Caliber and Volt*

69.     The Frenchers' incorporates all preceding paragraphs as if fully set forth herein.

70.     This consumer credit transaction was subject to the Frenchers''s right of rescission as described by 15 U.S.C. §1635 and Regulation Z § 226.23 (12 C.F.R. § 226.23)

71.     The "right of rescission expires three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first." §1635(f).

72.     A loan is not "consummated" until the actual lender is identified, because until that point there is no legally enforceable contract.

73.     The Frencher's purported lender was identified on September 30, 2015 and upon information and belief, CitiMortgage was and always has been the lender as evidenced by the assignments received in response to the Frenchers' Request for Information.

74.     On November 6, 2015, The Frenchers' rescinded the transaction, by sending notice of rescissions to Caliber Home Loans and VOLT.

75.     More than 20 calendar days have passed since Defendants received the Frenchers''s notice of rescission.

76.     Defendants have failed to take any action necessary or appropriate to reflect the

termination of any security interest created by the transaction, as required by 15 U.S.C. § 1635(b) and Regulation Z § 226.23(d)(2).

77.    Defendants have failed to return to The Frenchers' any money or property given by The Frenchers' to anyone, including  Defendants, as required by 15 U.S.C. § 1635(b) and Regulation Z § 226.23(d)(2).

78.    Defendant Caliber Home Loans, as servicer is also liable pursuant to 15 U.S.C. § 1641.

79.    As a result of these violations of the Truth in Lending Act and Regulation Z, Defendants are liable to the Frenchers' for:

a. Rescission of the transaction pursuant to 15 U.S.C. §1635(b).

b. Termination of any security interest in the Frenchers''s property created by the transaction pursuant to 15 U.S.C. §1635.

c. Return of any money or property given by the Frenchers' to anyone, including Defendants, in connection with this transaction, under 15 U.S.C. § 1635(b).

d. Statutory damages of $2,000 for Defendants' failure to respond properly to the Frencher's rescission notice pursuant to 15 U.S.C. § 1640(a)(2)(A).

e. Forfeiture and return of loan proceeds under 15 U.S.C. § 1635.

f. Actual damages in an amount to be determined pursuant to 15 U.S.C. § 1640.

g. Costs in accordance with 15 U.S.C. § 1640.

WHEREFORE, The Frenchers' requests the following relief:

(1) Declaratory and/or injunctive relief rescinding the mortgage on the Frencher's home upon such terms as the court determines;

(2) Termination of the Security interest;

(3) Return any money or property given by the Frenchers' including Defendants in connection with this transaction

(4) Actual damages in an amount to be determined by the court; and

(5) Statutory damages in the amount of $2,000.

(6) Reasonable attorney fees.

**COUNT II**
**Violation of the Federal Rico 18 U.S.C. § 1962(c)**
**(Caliber and Volt)**

80.     The Frenchers' incorporate and reallege the paragraphs above as if fully set out herein.

81.     This claim for relief arises under 18 U.S.C. § 1964(c).

82.     As set forth above, Defendants have violated 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the Caliber Enterprise through a pattern of racketeering.

83.     As a direct and proximate result, the Frenchers' have been injured in their business or property by both the predicate acts which make up the Defendants' patterns of racketeering activity.

84.     Caliber and Volt unlawfully executed, or caused to be executed, assignments that it had recorded in the Cook County Recorder's office.

85.     As of the date of this Complaint, Caliber and Volt have taken no action to disclose who the real owner of the Frencher's loan is and it is unlikely that they will take any action to disclose this information, such that their alleged misconduct will continue indefinitely into the future by continuing to prepare and record false assignments.

86.     The Frenchers' have been injured in their business or property in a variety of

ways, including paying unlawful and unreasonable inspection fees, having their property encumbered for repeated drive-by inspections which were unlawful and unreasonable, paying attorney fees and costs to defend a wrongful foreclosure, and having attorney fees assessed to their account that were not authorized by the note or mortgage.

87.     The Frenchers' have suffered losses of money as a result of Defendants' unlawful, deceptive and unfair business practices through the payment of fees being assessed to their property.

WHEREFORE, the Frenchers respectfully requests that this Honorable Court grant:

(1) Actual damages;

(2) Litigation expenses and costs of suit;

(3) Punitive Damages;

(4) Treble Damages; and

(5) Such other or further relief as the Court deems proper.

**COUNT III**
**Violation of the Federal RICO Act, 18 U.S.C. §1962(d)**
**(Caliber and VOLT)**

88.     The Frenchers' incorporate all preceding paragraphs as if fully set forth herein.

89.     Defendants conspired to use the Enterprise to defraud the Frenchers' through the illegal scheme described herein. This conspiracy violates 18 U.S.C. § 1962(d).

90.     Specifically, Caliber Enterprise conspired with the property inspection vendors to use the Enterprise via the Servicing System to order property inspections that were excessive and unlawful in number, frequency and cost. Defendants conspired to utilize this illegal scheme to enrich themselves at the Frenchers' expense.

91.     Caliber Enterprise and the property inspection vendors intentionally conspired

and agreed to conduct and participate in the conduct of the affairs of the Enterprise through a pattern of racketeering activity. Defendants knew their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

92. Defendants are therefore liable to the Frenchers under the federal RICO Act.

WHEREFORE, the Frenchers respectfully requests that this Honorable Court grant:

(1) Actual damages;

(2) Litigation expenses and costs of suit;

(3) Punitive Damages;

(4) Treble Damages; and

(5) Such other or further relief as the Court deems proper.

**COUNT IV**
*Fair Debt Collection Practices Act (FDCPA)*
*Caliber*

93. The Frenchers' incorporates all preceding paragraphs as if fully set forth herein

94. This claim is against Caliber Home Loans, Inc.

95. The Frenchers' is a consumer as defined by the FDCPA § 1692a (3).

96. The subject debt and related unauthorized fees and costs qualify as a "debt" as defined by the FDCPA § 1692a (5) as they arise out of a transaction for personal, family, or household purposes.

97. Caliber is a "debt collector" as defined by the U.S.C. § 1692a (6) because it regularly uses the mails and/ or the telephone to collect, or attempt to collect, delinquent consumer accounts and all of Caliber's statements and correspondence sent to the Frenchers' admits that Caliber is a debt collector attempting to collect a debt from the Frenchers'.

98. Caliber violated the FDCPA, 15 U.S.C. §§ 1692e, section 1692(f) and 1692 f (1) through its debt collection efforts by charging the Frenchers' drive by inspection fees, BPO fee, and foreclosure related fees.

99. The May 19, 2015 assignment purportedly assigning the Frencher's loan from Wilmington Finance, Inc., to CitiMortgage was deceptive because on December 7, 2010 the Frenchers loan had already been assigned to another entity.

100. Wilmington Finance, Inc. was no longer a party who had the ability to assign their loan and therefore the May 19, 2015 assignment was deceptive.

101. A violation of any section of the FDCPA is a strict liability.

102. As a result of Calibers actions and violations of the FDCPA, Caliber is strictly liable to the Frenchers' for damages, including but not limited to actual damages sustained, to their account, additional damages award, and cost of this action.

WHEREFORE, the Frenchers' respectfully requests the following relief:

(1) Statutory damages and actual damages in amount to be determined at trial;

(2) Litigation expenses and costs of suit, and

(3) Such other or further relief as the Court deems proper.

**COUNT V**
*Violations of the Illinois Consumer Fraud Act (Deceptive)*

103. The Frenchers' incorporates all preceding paragraphs as if fully set forth herein.

104. The Frenchers' meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

105. Caliber violated 815 ILCS 505/2 by engaging in unfair acts and practices when it charged the Frenchers' inspection fees, prepared bogus assignments, and charged foreclosure related fees.

106.    The Frenchers' have been injured by having their account assessed the fees, and hiring an attorney to defend a wrongful foreclosure based on a bogus and fraudulent assignments.

107.    Caliber's conduct occurred in the course of trade or commerce.

108.    The Frenchers' have been damaged by paying the attorney fees and having the fees assessed to their account and paying attorney fees.

109.    An award of punitive damages is appropriate because Caliber's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for the rights of the Frenchers'.

WHEREFORE, the Frenchers' respectfully requests the following relief:

(1) Statutory damages;

(2) Litigation expenses and costs of suit; and

(3) Punitive Damages

(4) Such other or further relief as the Court deems proper.

**COUNT VI**
***Breach of Contract***
***Caliber and Volt***

110.    The Frenchers' incorporates all preceding paragraphs as if fully set forth herein.

111.    According to Illinois law, every contract implies a covenant of good faith and fair dealing.

110.    The Frenchers have entered into a mortgage contract in the form of a mortgage and note.

111.    The Frenchers performed their duties under the contract by keeping the property secure and by complying with all of the other terms of the contract.

18

112.     Caliber and Volt breached the subject note and mortgage by charging the property inspections fees, foreclosure related fees, and other fees that were unreasonable, not performed and unnecessary.

113.     Caliber and VOLT's breach of the subject contract has caused the Frenchers damages that consist of illegal, unauthorized, and unreasonable charges and loss of equity in their home by having the fees assessed to their property, and paying attorney fees.

WHEREFORE, the Frenchers' respectfully requests the following relief:

(1) Actual damages;

(2) Litigation expenses and costs of suit;

(3) Punitive Damages for Caliber's willful and wanton conduct; and

(4) Such other or further relief as the Court deems proper.

## COUNT VII
### *Intentional Infliction of Emotional Distress*

114.     The Frenchers' incorporates all preceding paragraphs as if fully set forth herein.

115.      Caliber's conduct alleged herein, specifically the willful and knowingly charging the unlawful fees, the unlawful foreclosure, fear of losing their home to someone who does not own it has caused the Frenchers' severe emotional distress.

116.     Caliber intended and/or recklessly disregarded not only their duties and legal obligations to properly report the Frencher's payments as being made timely, but also the probability that its conduct would cause the Frenchers' to suffer severe emotional distress for fear of losing their home.

117.     As a result of Caliber's conduct, the Frenchers' have endured severe and extreme emotional distress that resulted in stress, anxiety, and lack of sleep.

118.     As a direct and proximate result of Caliber's willful and wanton conduct, the Frenchers'

suffered emotional distress, monetary losses by writing to the credit bureaus to get her credit report restored which as of the day of this filing has not been corrected.

WHEREFORE, the Frenchers' respectfully requests the following relief:

(1) Actual damages;

(2) Litigation expenses and costs of suit;

(3) Punitive Damages for Caliber's willful and wanton conduct; and

(4) Such other or further relief as the Court deems proper.

**JURY DEMAND:** The Frenchers' demand a trial by jury.

Respectfully submitted,

By: /s/ Herbert Hill
One of the Frenchers' Attorneys

Herbert Hill
The Law Office of Herbert Hill
605 N. Broadway
Aurora, Illinois 60505
Atty No: 1214853
P:  630-742-0374